133 N.J. Super. 526 (1975)
337 A.2d 632
JOHN M. PILLSBURY, PLAINTIFF,
v.
THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MONMOUTH AND RICHARD T. O'CONNOR, DEFENDANTS.
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MONMOUTH, PLAINTIFF,
v.
JOHN M. PILLSBURY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 11, 1975.
*528 Mr. Robert V. Carton for plaintiff and defendant John M. Pillsbury (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
Mr. Robert I. Ansell for defendant and plaintiff Board of Chosen Freeholders of Monmouth County (Messrs. Anschelewitz, Barr, Ansell & Bonello, attorneys).
*529 Mr. Richard T. O'Connor, pro se (Messrs. Cerrato, O'Connor, Mehr and Saker, attorneys).
HORN, A.J.S.C.:
Cross-actions in lieu of prerogative writs were instituted by the above-named parties, John M. Pillsbury (Pillsbury) and the Board of Chosen Freeholders of Monmouth County (board). Richard T. O'Connor is named a party defendant in the action brought by Pillsbury.
Because the actions are interrelated and involve common questions of law as well as fact, they were consolidated by consent, and also by consent the venue thereof was transferred to Atlantic County.
The primary issue which emerges from a review of each of the complaints is whether a county counsel whose three-year term of office has not expired may be compelled, without more, to terminate his services simply because a majority of the members of the freeholder board assert they have no confidence in him as county attorney.
An outgrowth of the controversy is whether the board may transfer the duties and responsibilities of the office of county counsel to another without legally terminating the term of the incumbent.
Upon the return of respective orders to show cause the arguments of counsel indicated there were no substantial factual questions. For all practical purposes the return was treated as though there were cross-motions for summary judgment.
The complaints and affidavits reveal that Pillsbury's three-year term as county counsel will not expire, according to the resolution appointing him, until October 19, 1976. His appointment was made pursuant to N.J.S.A. 40A:9-43, which specifically directs that the term of office of the county counsel shall be three years.
On January 2, 1975 the board adopted two resolutions. By one, Richard T. O'Connor was appointed special counsel *530 "to serve the County of Monmouth" for a term of one year. The duties of the special counsel were defined as follows:
* * * to review and approve all contracts, deeds, instruments and documents prior to the execution thereof by or on behalf of the County, and to serve as legal advisor to the various departments of the County unless otherwise specified, and to perform such other legal services as directed by the Board of Chosen Freeholders from time to time.
The second resolution requested county counsel Pillsbury to report to the board in writing on or before January 20, 1975 a detailed list concerning all matters then outstanding in which the county was involved, including, but not limited to, information as to each matter. Such a report was submitted to the board on or about January 20, 1975.
On January 21, 1975 the board adopted a motion directing Pillsbury to turn over all records and files to special counsel and further requested that he submit his resignation. Pillsbury declined both requests.
On February 4, 1975 the board enacted another resolution directing Pillsbury to turn over all records, materials and files to the director of the board, in order that it could review same
* * * and assign the legal work in its discretion as it deems necessary and desirable with a view toward avoiding expensive litigation, yet providing most efficient and thorough professional legal services to the County. The Board shall assign the legal work with due regard to the status of the matter and the nature of the work to be performed.
This resolution also provided that Pillsbury "need no longer appear at the Workshop or Public meetings of this Board."
Pillsbury countered, advising the director of the board that he would not permit actions that would relieve county counsel of all legal work and thereby result in that office becoming an empty shell. Shortly thereafter these actions were instituted.
*531 Pillsbury's complaint, after recounting substantially what is stated above, asserts that Mr. O'Connor has usurped the office of county counsel, taken upon himself the privileges thereof, and since January 2, 1975 has interfered with Pillsbury's performance of his duties as county counsel.
The relief sought by Pillsbury is: (1) a judgment determining and establishing the duties of county counsel; (2) enjoining and restraining the board from interfering with or denying the exercise by him of the full and complete duties and privileges of said office, and (3) restoring to him as such all rights, duties and privileges inherent in said office.
The complaint filed in behalf of the board asserts that Pillsbury has refused to turn over the files held by him as county counsel for review by the board and that Pillsbury has failed to supply information concerning certain particular legal matters. It seeks judgment directing Pillsbury to turn over all files and records in the county in his possession for review by the board and ancillary relief.
It has been established that county counsel is an office (as distinguished from a position) and that a board of chosen freeholders is powerless to remove the occupant thereof, in the absence of cause, prior to the expiration of the statutory term for which the incumbent is appointed. Murphy v. Hudson Cty. Freeholders, 92 N.J.L. 244, 247 (E. & A. 1918). The court stated, in passing:
* * * [I]t may not be amiss to say that the resolution [of dismissal] is particularly vicious in the present case, because it is based upon the assumed power of the board of chosen freeholders to dismiss a man from office who is apparently in the possession of it for a fixed term, and that without any charges laid against him, without any opportunity afforded to him to be heard, and without any suggestion of the basis upon which the action of the board was rested.
A similar holding was made by our former Supreme Court in Gallaher v. Camden Cty., 129 N.J.L. 290 (Sup. Ct. 1942). In that case the court reviewed two resolutions *532 adopted by the board of chosen freeholders. One of the resolutions removed plaintiff from the position of county counsel and the other resolution appointed another person to that position for a fixed term. At the time of the adoption of the resolutions plaintiff (like Pillsbury in the instant case) was an incumbent of the office of county counsel for a term of three years, which had not as yet expired.
Citing Murphy v. Hudson Cty. Freeholders, supra, the court likewise held that both resolutions were without authority  the first because there was no statutory authorization for removal, and the second because there was no vacancy in the office and no statutory provision authorizing the appointment of more than one person to the office.
Even before Murphy and Gallaher, implicit in the holding of State, Hoxey, pros., v. Paterson, 40 N.J.L. 186 (E. & A. 1878), was a similar holding. There the city charter authorized the board of aldermen to annually appoint certain officers, including city counsel, to hold their several offices for one year, unless sooner removed for cause upon a two-third vote. The ordinances prescribed the duties of city counsel.
The specific issue was whether the city had the right under its charter to employ and pay for legal services rendered by one other than the person who for the time being held the office of city counsel.
The court held that the corporate authorities would have the power under the charter provisions to employ associate counsel in defending suits brought against the corporation, or in which the city was interested; that the board of aldermen were the judges of the necessity of such employment in any particular case, and that the exercise of that discretion was not a question for review in a court of law.
However, the court went on to say:
* * * [T]he power of the corporation to employ associate counsel does not involve the right, on the part of the city authorities, under *533 the guise of such employment, to withdraw and take out of the hands of the city counsel any particular case or class of cases and to confide their management to others. [at 180]

* * * * * * * *
* * * If the board of aldermen, or any committee of the board, can withdraw part of the law business of the corporation from the control of the city counsel, they can, in like manner, dispose of the whole; and if they possess this power in relation to the duties of the city counsel, they have the same power in relation to the duties of every city officer. Neither the consent of the officer nor his incompetency or neglect of duty, could form any valid excuse for the action of the city authorities; while holding the office he cannot voluntarily relieve himself of the obligations to perform all of the duties; and for incompetency or unfaithfulness, the only remedy is the amotion of the officer pursuant to the provisions of the charter.
See also, Byrne v. Wildwood, 95 N.J.L. 287 (Sup. Ct. 1920).
Essentially, the board's contention is that the statute, N.J.S.A. 40A:9-43, providing for a mandatory term of office for county counsel, is incompatible with the rule-making power of the Supreme Court and is therefore unconstitutional, or at least must be subject to the rules of that court.
The asserted incompatibility arises from the fact that it is said that the statutory fixed-term requirement collides with the unique attorney-client relationship which traditionally permits the client to discharge his attorney at any time. This contention relies on DR2-110(B)(4), which provides that a lawyer shall withdraw from employment if he is discharged by his client.
The parties here do not make a point of the failure of the board to have adopted a resolution actually discharging Pillsbury. The board urges that N.J.S.A. 40A:9-43 must give way to the disciplinary rule under Winberry v. Salisbury, 5 N.J. 240 (1950). Winberry held that under the N.J. Const. (1947), Art. VI, § II, par. 3, the rule-making power of the Supreme Court is not subject to overriding legislation.
*534 It is conceded that the courts (i.e., Supreme Court) have the inherent power to decide who shall practice law and that attorneys are officers of the court, not of the State. State v. Rush, 46 N.J. 399, 410-411 (1966).
To declare an act of the Legislature to be unconstitutional is an extreme pronouncement and should not be done unless there is no possible legal accommodation between the force of the statute and the conflicting rule. Ahto v. Weaver, 39 N.J. 418 (1963); WHYY, Inc. v. Glassboro, 50 N.J. 6 (1967), rev'd o.g., 393 U.S. 117, 21 L.Ed.2d 242, 89 S.Ct. 286; Harvey v. Essex Cty. Bd. of Chosen Freeholders, 30 N.J. 381 (1959).
I find no incompatibility between N.J.S.A. 40A:9-43 and DR2-110(B)(4) in the context of an appropriate interpretation of the intent and purpose of the latter.
At first blush it seems that a public body should have the right to select its own counsel, who should serve at its pleasure. But N.J.S.A. 40A:9-43 evinces a specific legislative policy. When read in the context of the other sections of the chapter it may be inferred that the Legislature sought to guarantee an appointee at least three years in office. This may possibly be an attempt to attract better-qualified attorneys to accept the position, since they would be required to curtail their practice insofar as it may conflict with their duties as county counsel.
It may also be inferred that since county counsel may be a part of the policy-making of the county (dissenting opinion of Justices Jacobs and Schettino, Ahto v. Weaver, supra, 39 N.J. at 433) it is purposefully intended to eliminate or at least diminish political considerations, as expressly stated in N.J.S.A. 40A:9-25: "No officer or employee shall be removed from his office or position for political reasons."
Notwithstanding the vouchsafed right of clients to select other counsel, or perhaps, as put in DR2-110(B)(4), to discharge their attorneys, that rule did not indicate nor *535 can it be assumed that it contemplated a situation such as is before me.
Ordinarily private clients and their counsel confer privately, with resulting protections, such as confidential communications. In such cases, except for the contravention of laws generally, the State has no interest in the advice or the representation of the attorney. But the representation by a publicly retained attorney is on a different plane. It is true he is answerable for all the derelictions that privately retained counsel are answerable for. However, he is in addition subject to special laws affecting public officers with respect to malfeasance, misfeasance or nonfeasance.
He is also subject to the Right to Know Law, N.J.S.A. 47:1A-1 et seq., which appears to make his records open to public scrutiny unless inimical to the public interest.
As a practical matter, county counsel's advice to the members of the board relate to public business, not their private affairs. The confidential phase of the relationship is altogether different from that between a private client and his attorney.
Nor can Perella v. Jersey City Bd. of Ed., 51 N.J. 323 (1968), be accepted as a precedent for the board's contention on this point. The court in that case held only that under the Civil Service laws the Veterans' Tenure Act did not apply to the chief administrative counsel and the assistant counsel to the Board of Education of Jersey City. The court merely construed the applicable statutes. No statute similar to N.J.S.A. 40A:9-43 was involved in that case. The court's remarks[1] as to the relationship between counsel and boards of education, though to some *536 degree applicable to the instant case, were never intended to constitute a declaration repugnant to the statutory mandate by which Pillsbury was appointed.
Accordingly, I must reject the board's position, urging that it has the right to remove Pillsbury on the thesis that the statute authorizing his appointment, N.J.S.A. 40A:9-43, must fall before the superior right of a client to discharge his attorney. In denying the validity of the board's position, I observe that under appropriate circumstances a board of chosen freeholders is not powerless to remove its counsel.
N.J.S.A. 40A:9-25 authorizes county counsel's removal for cause if written charges are preferred and a hearing is afforded.[2] No such charges have been instituted. This is understandable in the light of the statement of Board Director Gumbs, who said at the meeting of January 2, 1975: "We are not casting aspersions on the work of Mr. Pillsbury. I feel and other members of the Board feel, that we should look into our Legal Department, and we should have confidence in our County Counsel * * *."
Freeholder Kramer said: "There is no doubt Mr. Pillsbury did a good job for the previous board, and the new Board, by its resolution [requesting Pillsbury to report to the board a detailed list of outstanding legal matters] is not casting any aspersions on him."
Yet, before having received the list  or even asking for it  at its very first organization meeting the board was taking steps calculated to remove Pillsbury or at least to turn his office into a mere name, with nothing to do but perhaps collect his salary.
This is further indicated by (1) the appointment of assistant county counsel on January 21, 1975 to serve before the Juvenile and Domestic Relations Court and "such other assignments as the Board * * * may make from time *537 to time," at a daily rate of compensation of $200; (2) notification on January 10, 1975 to department heads to submit to O'Connor all contracts for his review and approval; (3) notification to the prosecutor on January 16, 1975 to refer legal actions to O'Connor; (4) resolution of January 21, 1975 asking Pillsbury to resign; (5) resolution of February 4, 1975 inviting Pillsbury not to appear at the workshop or public board meetings.
The board next contends that even if it may not remove Pillsbury, it has the right, by law and by necessary implication that the duties and responsibilities of the board create, to appoint special counsel and assistants, not only in whom it has confidence and trust but through whom it may revamp the legal department for improvement.
It is conceded by Pillsbury that the board has the right to appoint assistant counsel where needed to assist in carrying out the duties of county counsel. N.J.S.A. 40A:9-9; Ahto v. Weaver, supra 39 N.J. at 424.
It likewise cannot be disputed that under appropriate circumstances a board may even appoint special counsel for specific and probably extraordinary legal matters. But, as stated, this authority is circumscribed in that it may not be done as a guise to obscure the real intention to strip the duly and regularly appointed counsel of his powers and responsibilities as counsel. State, Hoxey, pros., v. Paterson, supra; Byrne v. Wildwood, supra.
Succinctly stated, the board urges that it has the authority to organize the office of county counsel in a manner which recognizes and effectuates the inherent dichotomy between traditional legal representation of continuous, standing, organized county institutions and agencies on the one hand, and creative, judgmental legal advice to the ultimate policy-making tribunal on the other hand. It states that this power must be found in the N.J. Const. (1947), Art. IV, § VII, par. 11, which mandates that the provisions of the Constitution and of any law concerning counties shall *538 be liberally construed in their favor, and also in N.J.S.A. 40:20-1, which commits the property, finances and affairs of every county to the management, control and government of its board of chosen freeholders. These provisions, and also the general power to appoint such other officers, agents and employees in addition to those specifically provided for by law (N.J.S.A. 40A:9-9), are said by the board to grant the necessary power "to organize the county administration in such a way that those tasks not expressly given to statutorily mandated officers or those tasks which cannot be adequately or appropriately performed by them can nonetheless be met by the county government."
The fact that specific duties of county counsel are not detailed by statute is said to indicate, along with the broad grant of organizational power to the board, that it has the authority to determine the interstices of the office.
I cannot agree with this rationalization. To carry it out to its ultimate spells a conclusion that it may so define the office to its destruction. That is not an acceptable thesis in the face of the statute and other factors.[3]
Nor is the constitutional mandate for liberal construction of laws in favor of counties a license to extend the scope of a statute beyond that expressly provided or reasonably to be implied, but it calls for broad interpretation to advance the Legislature's declared policy within prescribed limits. Fedi v. Ryan, 118 N.J.L. 516 (Sup. Ct. 1937). That mandate does not connote an extension of the boundaries delineated by the statutory phraseology as commonly used, Grogan v. DeSapio, 11 N.J. 308 (1953), and it does not warrant illegal actions on the part of a *539 municipality. Id. See also, Union Co. Bd. of Freeholders v. Union Cty. Park Comm'n, 41 N.J. 333 (1964).
The board urges the court to realistically appraise the situation in the light of the breadth of the statutes granting power to the board to govern and the constitutional mandate to construe laws favorably for the county, as well as the fact that the Legislature has failed to specifically define the duties of county counsel. Thus, it says that an overlapping of elections and terms of offices has left political adversaries in the unhappy position of conflict in a relationship which requires the utmost in trust and confidence. It cites the friction prevailing between the board and Pillsbury as hampering the board in performing its responsibilities.
This argument overlooks several facts. First, a fair reading of N.J.S.A. 40A:9-43 in its context with the other sections of Title 40A, chapter 9 of the Revised Statutes evidences the intention of the Legislature that county counsel's term should continue notwithstanding political changes. As already observed, the law expressly forbids removal of county officers for political reasons. N.J.S.A. 40A:9-25. Second, if the sole basis of removal or rendering the office of county counsel a sterile one is alleged mistrust, it can reasonably be anticipated that every time there is a change in the political complexion of the board there will be a mistrust, with consequent removal of county counsel or the stripping of his prerogatives. Third, the actions of the board from their inception, without any disclosed factual basis and even with acknowledgment of the competency of Pillsbury, were calculated to unseat him. This naturally produced a defensive reaction on his part. It may be assumed that when the present controversy terminates and the parties are aware of their legal positions they will relax their respective antagonistic stances, the frictions will disappear and they will all proceed with their respective obligations to further the interests of the public.
*540 The board's avowed purpose, as stated above, is to organize the legal department in a manner which recognizes and effectuates the inherent dichotomy between traditional legal representation of continuous, standing, organized county institutions and agencies on the one hand, and creative, judgmental legal advice to the ultimate policy-making tribunal on the other. This avowed purpose does not require the removal of present counsel. The suggestion was not even broached to him, apparently. The board, as an artisan, has attempted to use a hammer where the appropriate tool should have been one less forceful and which would be less likely to inflict damage on the subject matter.
There is nothing before me to indicate that an attempt to amicably effectuate the board's plan would not have succeeded. The board has suggested a method of diversion of the legal duties among the county counsel's legal staff. Briefly, it consists of separating the everyday work of reviewing contracts, advising department heads and appearing in court in various county matters, from the other work of meeting with the board and advising on judgment matters. Actually, the plan is nothing more than an attempt to dislodge Pillsbury from his duty to advise the board.[4]
Unlike some instances where the duties of municipal counsel have been defined in whole or in part (State, Hoxsey, pros., v. Paterson, supra; Byrne v. Wildwood, supra; Evanko v. Duff, 63 N.J. Super. 548, 556 (Law Div. 1960)), the duties of county counsel are not defined.[5]
N.J.S.A. 40A:9-43 also authorizes the appointment of and fixes the term of county engineers. Their duties likewise are not prescribed specifically. Cf. also, N.J.S.A. *541 40A:9-139, municipal attorneys, and N.J.S.A. 40A:9-140, municipal engineers, whose duties likewise are undefined. On the other hand, the duties of county treasurer, N.J.S.A. 40A:9-27; county comptroller, N.J.S.A. 40A:9-28; county auditor, N.J.S.A. 40A:9-28; county purchasing agent, N.J.S.A. 40A:9-30; general storekeeper, N.J.S.A. 40A:9-31; county supervisor, N.J.S.A. 40A:9-38; county administrator, N.J.S.A. 40A:9-42, as well as morgue keepers, N.J.S.A. 40A:9-52, are described.
The lack of statutory description of counsel's duties is understandable. Traditionally such duties have been defined in the phrase "practice of law." This consists generally of conducting litigation in courts, and the rendition of legal service to another or legal advice as to his rights and obligations under the law  calling for a degree of legal knowledge or skill, usually for a fee  including the pursuit, as advocate for another, of a legal remedy within the jurisdiction of a quasi-judicial tribunal. N.J. State Bar Ass'n v. Northern N.J. Mtg. Associates, 32 N.J. 430 (1960); Tumulty v. Rosenblum, 134 N.J.L. 514 (Sup. Ct. 1946).
Thus, N.J.S.A. 2A:170-78 and 79 provide simply that any person not licensed as an attorney and who engages in the practice of law is a disorderly person. Businesses and practices excepted are stated in N.J.S.A. 2A:170-81.
I view the failure of the Legislature to define county counsel's duties to be the result of its knowledge that the practice of law is already fairly well determined. I am obliged to hold that his duties are coincident with representing the county and advising in all matters which only a licensed attorney may do.
As county counsel the incumbent is the law officer of the county, with the power, duty and responsibility of managing all legal matters for the county. As already stated, he does not represent the members of the board individually, *542 but only collectively when acting as a board. See Evanko v. Duff, supra.
The assistant counsel, as related, may be appointed by the board or, if authorized by the board, may be appointed by county counsel. N.J.S.A. 40A:9-9. But no matter who appoints, such assistants are subject to the supervision and direction of the law department head  the county counsel. Ahto v. Weaver, supra 39 N.J. at 430.
Even if the board had the power to "legislate" the office of county counsel, as contended by it, to the extent of defining its duties, it may not then usurp the function of counsel to supervise and direct assistants with respect to the matters to be entrusted to them, respectively.
But such definition does encroach upon the statutorily assigned duties of Pillsbury. He is the head of the county law department, so that question arises as to whether such direction contained in the resolution appointing O'Connor and later directives to department heads are valid. I do not believe that they are, since said resolution and later directives appear to be clear attempts to remove from the supervision of county counsel those duties assigned to O'Connor, none of which is justified under the theses enunciated in State, Hoxsey, pros. v. Paterson, supra; Byrne v. Wildwood, supra, or in Osborne v. Murphy, 119 N.J.L. 65 (Sup. Ct. 1937).
Certainly the board has some control over county counsel. It must have, since it is responsible for the overall county government. County counsel is responsible to the board to see to it that if given the necessary help his office properly performs its functions. As stated, county counsel, as a public officer, is subject to prosecution for malfeasance, misfeasance or nonfeasance.
Consequently, the board has a right to review the legal files for that purpose in a reasonable fashion, but not for an unlawful purpose, such as depriving county counsel of same or assigning specific duties or files to its appointed *543 assistants, such as was attempted in the appointment of assistant county counsel at $200 a day, "to serve before the Juvenile and Domestic Relations Court * * * and such other assignments as the Board * * * may make from time to time."
It causes one to wonder what expertise the board enjoys to determine that this assistant was more qualified, more knowledgeable and more experienced to serve in this particular assignment than county counsel.
NOTES
[1] The court said, inter alia, that a member of the bar as counsel to a public body has a position of trust and confidence born in the confidence the public body, rarely of permanent status, has in the ability, honestly and personality to the individual selected. Also the relationship is simply that of attorney and client, basic to which, from time immemorial, has been the desirability of personal selection of the attorney by the client.
[2] See quotation from Murphy v. Hudson County Freeholders, supra.
[3] This theme was expressed in State, Hoxsey, pros., supra, 40 N.J.L. at p. 190, when the court said: "If the board * * *, can withdraw part of the law business of the corporation from the control of city counsel, they can, in like manner, dispose of the whole; and if they possess this power in relation to the duties of the city counsel, they have the same power in relation to the duties of every city officer."
[4] Possibly it could have been accomplished by requesting a specific assistant for this purpose.
[5] A statute relating to admissions of certain persons to public institutions, but which is confined only to that, provides: "County counsel includes the chief legal officer or advisor of the board of chosen freeholders * * *." N.J.S.A. 30:4-23.